UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5: 21-123-DCR-6 |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| CRYSTAL GALLEGOS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Defendant Crystal Gallegos pleaded guilty to one count of conspiring to commit money laundering in violation of 18 U.S.C § 1956(h).  She was later sentenced to 87 months' imprisonment.  [Record No. 125] On February 16, 2024, Gallegos filed a motion for compassionate release pursuant to 18 U.S.C. § 3582 2(c)(1)(A), citing to family circumstances and her own health challenges.  [Record No. 153]  Her motion will be denied for the reasons outlined below.

**I.**

Gallegos is a 35-year-old inmate confined at Federal Correctional Institution Pekin in Pekin, Illinois.[1]  She filed a motion to vacate, correct, or set aside her conviction pursuant to 28 U.S.C. § 2255 on June 13, 2023.  [Record No. 137]  However, the motion was denied.

Citing her mother's need for a caregiver and the Bureau of Prisons' ("BOP") inability to provide adequate care addressing her own physical and mental health issues, Gallegos has

---

[1]      Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed Mar. 18, 2024).

now filed a motion for compassionate release.  The United States objects to the present motion. First, it argues that Gallegos is not entitled to a reduced sentence because she is not the only potential caregiver for her mother.  And the government further contends that Gallegos' non-life threatening physical and mental health issues can be properly treated by the BOP.

## II.

Te Court follows a three-step process when considering § 3582(c)(1)(A) motions.  *See United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020).  First. Provided that a defendant's administrative remedies have been exhausted, the court determines whether the defendant has demonstrated an "extraordinary and compelling reason" to warrant a sentence reduction.[2]  *Id*.  Second, the court examines whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission.  *Id*. at 1108.  Third, the court determines whether a sentence reduction is "warranted in whole or in part under the particular circumstances of the case" when considering the factors set forth in 18 U.S.C. § 3553(a).  *Id*. at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Courts are generally without authority to "modify a term of imprisonment once it has been imposed," but there has long been an exception for cases where "extraordinary and

---

[2]     Congress originally tasked the Sentencing Commission with determining "what should be considered extraordinary and compelling reasons for sentence reduction," limiting its discretion only with the qualification that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *See* 28 U.S.C. § 994(t).  Consistent with this directive, the Commission previously identified four circumstances it viewed as extraordinary and compelling reasons for a sentence modification: (1) the medical condition of the defendant; (2) the age of the defendant; (3) "family circumstances," such as when a defendant is the sole caregiver to a spouse or minor child; and (4) "other reasons," as determined by the BOP.  *See* U.S.S.G. § 1B1.13.  The Commission recently provided additional guidance regarding the circumstances which may constitute extraordinary and compelling reasons to warrant relief.

compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(2)(A)(i). Prior to enactment of the First Step Act of 2018, only the United States Bureau of Prisons ("BOP") could request compassionate release on a defendant's behalf. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (citing § 3582(c)(1)(A) (2002)). However, the First Step Act eliminated this gatekeeping role and allowed prisoners to move for relief when the BOP declined to act. *Id.*

## III.

Gallegos has exhausted her administrative remedies. Gallegos argues that she is entitled to compassionate release because her mother, whose health is deteriorating, needs her as a caregiver. Amendment 814 to the United States Sentencing Guidelines revised U.S.S.G. § 1B1.13 by expanding the scope of family circumstances that may warrant compassionate release, including when a defendant's parent becomes incapacitated. Pursuant to U.S.S.G. 1B1.13(3)(C), courts may consider the incapacitation of the defendant's parent as an extraordinary and compelling circumstance warranting compassionate release when the defendant would be the *only* available caregiver.

Gallegos indicates that her mother suffers from a seizures and type-two diabetes. [Record No. 153] She also claims her mother experiences anxiety and takes a number of prescription medications. However, the letter Gallegos appended to her motion suggests her mother "works 20 hours per week." [Record No. 153-3] An individual capable of performing part-time labor is largely inconsistent with incapacitation. But even assuming her mother is in fact incapacitated, Gallegos has failed to show that she is the only available caregiver. Gallegos' record "reflects that she has a stepfather and four adult siblings, all of whom reside in Chicago, Illinois" where her mother likewise claims residence. *See* PSR at ¶ 49. While the

extent of her mother's relationship with members of this immediate family is unclear, Gallegos has failed to show that her family circumstances rise to the level of extraordinary and compelling.

Next, Gallegos claims that BOP has failed to provide adequate care for her own health issues. Gallegos contends that she requires surgery on her left leg after being in an automobile accident before she was arrested. And she argues that BOP "has not been able to provide timely and adequate medical care or treatment" for this injury. [Record No. 153] Separately, Gallegos asserts that, as an inmate, she does not have access to proper mental health counseling.

Within the Sixth Circuit, compassionate release has been historically justified by an inmate's poor health if a defendant suffers from "unusual circumstances which could not have been reasonably foreseen by the court at the time of sentencing" or "if an inmate becomes severely ill" from a terminal condition. *See McCall*, 56 F.4th at 1059. However, the Sentencing Commission recently adopted a policy statement that expands the medical circumstances that may warrant compassionate release. Specifically, the new subcategory applies when a defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" and when the defendant "is at risk of serious deterioration in health or death" without that care. *See* U.S.S.G. 1B1.13(b)(1)(B)(iii).

In preparing its response, the United States consulted with BOP officials and obtained Gallegos' relevant medical records. However, these records neither contain a diagnosis of a terminal illness nor indicate that Gallegos suffers from a serious health issue that BOP cannot effectively treat or manage. *Id*. In fact, Gallegos' medical records are rather limited and "do not reflect the Defendant ever seeking treatment for her injuries." [Record No. 155] According

- 4 -

to the government, Gallegos records instead notate her "refusal of preventative medical care offered by BOP." *Id.* Gallegos purportedly "has been counseled on how to obtain and access medical care; however, she has failed to do so." *Id.* Gallegos cannot reasonably argue that she is unable to obtain proper care as an inmate when she has not yet sought treatment for her purported physical or mental issues. Because Gallegos has not demonstrated she requires specialized medical care that the BOP cannot provide, her medical circumstances do not rise to the level of extraordinary and compelling.

Finally, Gallegos points to a variety of rehabilitation programs in which she has participated. But within the Sixth Circuit, post-conviction rehabilitation alone does not necessarily render a defendant eligible for compassionate release. *See McCall*, 2022 WL 17843865, at *11 ("[R]ehabilitation . . . cannot by itself justify a sentence reduction."); *see also United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020). While Gallegos' rehabilitative efforts are commendable, they do not amount to an extraordinary and compelling circumstance warranting release either independently or when considered alongside other factors.

### IV.

Even if Gallegos had presented a circumstance that could be considered extraordinary and compelling, the 18 U.S.C. § 3553(a) factors weigh against reducing her sentence. Under 18 U.S.C. § 3553(a)(1)-(2), courts consider, *inter alia*:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

 (B) to afford adequate deterrence to criminal conduct;

 (C) to protect the public from further crimes of the defendant; and

 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The nature of Gallegos' offense is serious.  Specifically, she was convicted for conspiring to launder drug proceeds in Kentucky and Illinois for repatriation to drug organizations based in Mexico.  [Record No. 155] Gallegos "personally laundered approximately $390,000.00" of funds from drug transactions. *Id*.  Even more, law enforcement officials found nearly six kilograms of cocaine and nearly 2 kilograms of heroin in her residence at the time of her arrest.  *Id*.  These facts suggest that Gallegos played an active role in the money laundering conspiracy.

Although Gallegos argues the BOP has determined that she poses a "minimal risk for recidivism with a minimum risk for violence" based on her limited criminal history, she was previously convicted for money laundering in 2016.  *Id*.  As the government aptly observes, Gallegos was undeterred when she helped launder drug proceeds in 2019 and 2020 "[d]espite having been arrested and convicted of a similar offense in the past."  *Id*.  Her past recidivism underscores the need for a sentence that provides her with specific deterrence from committing similar crimes in the future.  The Court concludes that the § 3553(a) factors support preserving the term of incarceration originally imposed.

**V.**

For the reasons outlined above, it is hereby

**ORDERED** that Defendant Gallegos' motion for compassionate release pursuant to 18

U.S.C. § 3582(c)(1)(A) [Record No. 153] is **DENIED**.

Dated: March 19, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky